UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO.: 2:24-cr-92-SPC-KCD

JASON ALLEN HENNING
_____

**ORDER**

Before the Court are Defendant Jason Allen Henning's Motion to Suppress (Doc. 37) and the Government's response (Doc. 40). On April 21, 2025, the Court held an evidentiary hearing on the motion, at which Defendant was present and represented by counsel. (Doc. 74). For the below reasons, the Court denies the motion.

**Background**

In 2013, Defendant was convicted on child pornography charges (*United States v. Henning*, 2:12-cr-14-JES-SPC (M.D. Fla. 2013)). The Court sentenced him to ten-years' imprisonment followed by lifetime supervised release, which began on September 9, 2021. Defendant was instructed as to the conditions of his supervision once he began supervised release. These conditions required him to submit to polygraph testing for treatment and monitoring purposes, restricted his access to the internet, precluded direct contact with minors (without approval of the probation officer), and mandated his participation in

a sex offender treatment program. Additionally, Defendant was required to submit to a search of his person, residence, and computer at a reasonable time and place based upon Probation's reasonable suspicion of contraband or evidence of a violation of a condition of release. (Doc. 74-2). Defendant was reminded of these conditions numerous times during his supervised release home visits.

On September 28, 2023, Defendant submitted to a polygraph examination administered by Brent Cox from NFM Polygraph Services. According to Cox, the test yielded a significant response. Cox notified Probation Officer Katrina Harmaty—the officer assigned to Defendant's supervision—that Defendant had significant response findings regarding two questions related to unauthorized internet access and contact with minors.

A couple of weeks later, Officer Harmaty conducted a home visit at Defendant's residence, where he lived with his father. During the visit, Officer Harmaty noticed modifications made to the computer owned by Defendant's father that had not been disclosed to Probation.[1] Someone had disassembled the tower and moved it to a different room in the house, replacing it with a new tower. Officer Harmaty asked Defendant's father to log into the computer, at

---

[1] Probation knew of the computer from Defendant's pre-release phase. But Probation did not authorize Defendant to use the home computer, and it required that the computer maintain password protection. Defendant was only permitted internet access at work strictly for email and to use Microsoft Teams.

which point she realized the computer was not password protected. She then showed Defendant's father how to password-protect the computer, which he did in her presence.

On November 29, 2023, Officer Harmaty spoke with Christina Reynolds, agency head of New Reflections Treatment Services, about the Defendant and his participation in individual and group treatment. As Officer Harmaty understood based on her conversation with Reynolds, during his group therapy, Defendant expressed his displeasure with Probation password-protecting his father's computer. But Ginger Cappelli, the group counselor, testified at the hearing that Defendant never expressed *his own* frustration with the new password. Rather, Defendant shared that *his father* was frustrated with the new security measure.[2] She put this in her session notes, which are available to Reynolds—the individual who staffs treatment issues with Probation. Cappelli rarely speaks directly with Probation. In any event, Defendant submitted to another polygraph examination that same day.

Cox administered the second polygraph examination as well. During the examination, Cox asked Defendant whether he accessed the internet for

---

[2] Although the substance of their testimony conflicts, the Court finds both Cappelli and Officer Harmaty credible. While Cappelli's notes reflect Defendant actually noted *his father's* frustration with the new security measure, Officer Harmaty's understanding from Cappelli's supervisor that Defendant expressed *his own* frustration was reasonable because she relied on what Reynolds informed her. So this inconsistency in testimony does not alter the Court's analysis.

3

anything other than work. Defendant's answer yielded a significant response, indicating deception. Cox shared this result with Officer Harmaty.

At this point, Officer Harmaty sought to determine whether Defendant was accessing the internet at work or at home. On December 5, 2023, she visited Defendant's place of employment unannounced. During the visit, Officer Harmaty advised Defendant of the polygraph results. Defendant stated he was not feeling well (due to the stress of the polygraph) but adamantly denied accessing the internet at work.

On January 11, 2024, Officer Harmaty internally submitted a reasonable-suspicion statement (Doc. 74-6) and requested to search Defendant's residence. Officer Harmaty testified, and the written statement confirms, that she did not base her reasonable suspicion on any one event but the totality of the circumstances, including the failed polygraph results, the results of the home visit, admissions during the group session, and speaking to Defendant at his place of employment. After she was given the go-ahead for the search, she prepared a written search plan.

Based upon her reasonable suspicion, on January 19, 2024, the Probation Office searched Defendant's Cape Coral residence. The search revealed numerous undisclosed digital items—including two smart phones and a tablet. Probation seized the devices. Probation Officer Kyle McCrohan conducted a forensic preview of the seized devices for potential child sexual

4

abuse material. He identified numerous files depicting child sexual abuse material. Probation ceased its investigation and contacted the FBI. The FBI assigned Special Agent Lisa Drakes to the case.[3]

Agent Drakes began an investigation of Defendant for possession of child pornography. Relying exclusively on material obtained from Probation, she applied for a search warrant authorizing the search of the devices seized by Probation. (Doc. 74-3). On February 15, 2024, she obtained the search warrant (Doc. 74-4), which was executed the next day. The subsequent forensic analysis of the seized devices revealed over 1,000 images and 300 videos depicting sexual abuse of children. On July 24, 2024, a federal grand jury indicted Defendant for possession of child pornography.

**Legal Standard**

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. This right extends outside the courtroom, privileging an individual "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Generally, if a person desires Fifth Amendment protection, he must explicitly invoke it. *See*

---

[3] Drakes testified at the suppression hearing, and the Court finds her testimony credible.

*Minnesota v. Murphy*, 465 U.S. 420, 429 (1984) ("[A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself.").

The Fourth Amendment protects against unreasonable searches:

> The right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. These protections apply to individuals on supervised release. *See Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982) ("There is no question that the Fourth Amendment's protection against unreasonable searches and seizures applies to probationers."). However, because they have been convicted of crimes, supervisees' rights are subject to limitations, and their expectation of privacy is diminished. *Id.* at 1367–68; *see also United States v. Knights*, 534 U.S. 112, 120 (2001) (holding individuals on supervised release have a "significantly diminished . . . expectation of privacy").

Defendant's conditions of supervised release permitted Probation to search his home and computer "based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." (Doc. 74-2). "The Supreme Court has upheld warrantless searches of probationers' homes based on reasonable suspicion." *United States v. Rosenthal*, 295 F. App'x 985, 987 (11th

6

Cir. 2008) (citing *Knights*, 534 U.S. at 121–22). Thus, Probation needed only reasonable suspicion of a violation of Defendant's conditions of supervised release to conduct the warrantless search of his home. *Id.*; *see also United States v. Gay*, No. 8:24-CR-227-WFJ-TGW, 2025 WL 385571, at *4 (M.D. Fla. Feb. 4, 2025) ("And the inquiry is not whether there was reasonable suspicion that a crime was afoot; the inquiry is reasonable suspicion of a probation violation.").

The reasonable-suspicion standard is not high. Reasonable suspicion entails more than "an inchoate and unparticularized suspicion or hunch" but "is less demanding" than probable cause, requiring a showing that is "considerably less than preponderance of the evidence." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004); *Jackson v. Sauls*, 206 F.3d 1156, 1156 (11th Cir. 2000). In short, reasonable suspicion requires only a "minimal level of objective justification." *Jackson*, 206 F.3d at 1156. "The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (citation omitted). "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal

wrongdoing." *Id.* Thus, the Court "must take stock of everything [the officer] knew before searching." *Id.*

## Analysis

Defendant moves to suppress all evidence derived from Probation's warrantless search and from the FBI's search warrant, claiming violations of his Fourth and Fifth Amendment rights. He argues the polygraph examinations violated his Fifth Amendment right against self-incrimination because he was compelled to answer the polygraph examiner's incriminating questions, the responses to which subjected him to a search and, ultimately, this prosecution. In turn, he also argues Probation lacked reasonable suspicion for the warrantless search, which he believes was based only on the polygraph results and the unsecured computer in his home.[4] Finally, he argues that because Probation's search was improper, the FBI search warrant was also invalid because it relied exclusively on evidence obtained from Probation's unlawful search.

---

[4] Defendant also argues that the warrantless search did not include any limitation or direction, so it was a "general search forbidden by the Fourth Amendment." (Doc. 37 at 10). But other than this broad assertion, he offers no argument (in his brief or during the hearing) that Probation executed the search in an unreasonable manner or that the search exceeded Probation's purpose. *See Owens v. Kelley*, 681 F.2d 1362, 1368–69 (11th Cir. 1982) ("Any search conducted pursuant to the search condition of probation must, of course, be carried out in a reasonable manner and only in furtherance of the purposes of probation."). Notwithstanding the undeveloped nature of this argument, Officer Harmaty testified that she prepared a written search plan before the warrantless search. So this argument warrants no further attention.

At the outset, the Court observes that addressing Defendant's arguments is a needless exercise. To impugn Probation's reasonable suspicion for the warrantless search, Defendant challenges the utility and constitutionality of the polygraph examinations and dwells on the inconsistency between Cappelli and Officer Harmaty's testimony about Defendant's group therapy complaints. But even removing these contested points from consideration, Probation had reasonable suspicion for the search. During a visit of Defendant's residence, Officer Harmaty observed the computer tower had undisclosed modifications, and the computer was not password protected. These unchallenged facts, combined with Officer Harmaty's knowledge that Defendant had previously been convicted of child pornography possession and was subjected to internet restrictions, constituted reasonable suspicion for Probation to search Defendant's residence. Nevertheless, the Court takes on Defendant's arguments.

The Court begins with Defendant's Fifth Amendment challenge. He argues that Probation violated his right against self-incrimination by compelling him to answer the polygraph examiner's incriminating questions, which resulted in a search and ultimate prosecution. This is not a novel theory.

In *Minnesota v. Murphy*, the Supreme Court explained that a state may generally require a probationer to appear and discuss matters that affect his probationary status without violating the Fifth Amendment. 465 U.S. at 435.

It did, however, recognize a Fifth Amendment issue may arise "if the questions . . . call for answers that would incriminate him in a pending or later criminal prosecution" and asserting the privilege "would lead to revocation of probation." *Id.* But questions "relevant to his probationary status and pos[ing] no realistic threat of incrimination in a separate criminal proceeding" would not violate the Fifth Amendment. *Id.* at 435 n.7. If a supervisee is asked incriminating questions, the Eleventh Circuit has explained he may raise a Fifth Amendment challenge "when [he] is forced to testify over his valid claim of privilege." *United States v. Boone*, 215 F. App'x 818, 821 (11th Cir. 2007); *Zinn*, 321 F.3d at 1092 ("If and when Appellant is forced to testify over his valid claim of privilege, he may raise a Fifth Amendment challenge.").

Against this backdrop, there are several issues with Defendant's argument. There is no indication he ever asserted his Fifth Amendment privilege, and he provides no argument that the privilege was self-executing. *See, e.g., Murphy*, 465 U.S. at 436–37 (finding the defendant's privilege was not self-executing despite a requirement to "be truthful with his probation officer in all matters and that failure to do so could result in revocation of probation"). More problematic, none of Defendant's statements in the polygraph examinations were used to incriminate him. His responses to the examiner's questions about his internet access contributed to reasonable suspicion. The illicit images Probation uncovered during the search

10

incriminated him. Indeed, Defendant's unauthorized internet access, while a violation of his conditions of supervised release, was not a criminal act. As such, his statements on this topic are the type contemplated in *Murphy* that are "relevant to his probationary status and pose[] no realistic threat of incrimination in a separate criminal proceeding[.]" *Id.* at 435 n.7. So Defendant's Fifth Amendment challenge fails. *Cf. United States v. Rogers*, 988 F.3d 106, 113 (1st Cir. 2021) (rejecting a Fifth Amendment challenge to statements given during a polygraph examination).

Having established Defendant's polygraph examination responses do not violate the Fifth Amendment, the Court turns to Defendant's Fourth Amendment challenge. He argues that Probation's warrantless search cannot be based "merely on a polygraph examiner's opinion that the defendant was deceitful." (Doc. 37 at 8). In Defendant's view, the proper purpose of the polygraph examinations is not to gather evidence but to encourage a supervisee's truthfulness with his probation officer, ensure that he is abiding by the terms of his supervised release, and alert potential issues to the probation officer. *See United States v. Begay*, 631 F.3d 1168, 1175 (10th Cir. 2011) (explaining how polygraph testing, although inadmissible in court, can "be an effective supervision and rehabilitation tool"). He is not wrong. But he misses the bigger picture.

11

Restricted internet access was a condition of Defendant's supervision. Defendant raised a red flag by providing deceitful responses during two polygraph examinations when asked about unauthorized internet access. To ensure Defendant was complying with his Court-imposed internet restriction, Probation subsequently searched his home. Thus, the search was entirely consistent with the purpose of imposing polygraph examinations as a release condition. Despite Defendant's characterization, Probation was not fishing for evidence. Rather, the examiner's questions were tailored to Defendant's conditions of release, *i.e.*, unauthorized internet access and contact with minors. That Probation uncovered incriminating evidence during the subsequent search does not mean the underlying polygraph examinations ran afoul of their intended purpose.

And despite Defendant's contention, Probation did not base its search solely on the polygraph examinations. At the time of the search, Officer Harmaty knew that Defendant was previously convicted of child pornography possession, knew his internet access was restricted, knew that undisclosed modifications were made to his father's computer in an area of the home that he had access to, knew the computer had not been password protected (despite a requirement that it must be). She also believed—based upon what she was told by the director of New Reflections Treatment Services—that Defendant complained during a group therapy session about Probation securing his

12

father's computer with a password. When viewing these facts in totality, Officer Harmaty and Probation had reasonable suspicion that Defendant was accessing the internet in violation of his supervised-release conditions. *Cf. United States v. Bishop*, 683 F. App'x 899, 909 (11th Cir. 2017) (finding reasonable suspicion when probation knew the defendant was previously convicted of a sex offense with a minor, was subject to internet restrictions, was in possession of an undisclosed iPhone with internet access, lied to probation about his access the internet, and appeared nervous about the phone); *Yuknavich*, 419 F.3d at 1311 (finding reasonable suspicion when probation knew of the defendant's two prior convictions, knew the restrictions on his internet usage, knew that he previously accessed the internet without supervision, he delayed ten minutes in opening the door, he acted nervous, and the officers observed a phone line running into a modem connected to his computer).

Defendant also argues that polygraph examinations have little utility given they are inadmissible at trial. This position is equally unconvincing. *United States v. Beyers* is persuasive on this point. No. 13-0349-CR-W-GAF, 2014 WL 4113324, at *7 (W.D. Mo. Aug. 19, 2014). There, the defendant similarly argued that "the sole basis for the probation officer's reasonable suspicion was [his] performance on the polygraph test" which "cannot form the basis for the search because they are inadmissible as trial evidence and as

13

evidence for sentencing purposes." *Id.* Rejecting this argument, the court observed:

> The reliance on polygraph results is not *per se* unreasonable and forms only a part of the totality of the circumstances in this case. The positive use of polygraph examinations as part of probation conditions for sex offenders is well-documented. It would make no sense to routinely require such a condition, but then conclude that a probationer's responses are meaningless.

*Id.*; *see also United States v. Pope*, No. 1:18-CR-00017-GNS-HBB1, 2019 WL 7666528, at *6 (W.D. Ky. Aug. 19, 2019), *report and recommendation adopted*, 2019 WL 5068663 (W.D. Ky. Oct. 9, 2019), *aff'd*, 852 F. App'x 945 (6th Cir. 2021) (arriving at a similar conclusion). The Court finds *Beyers* persuasive, particularly considering the Eleventh Circuit has repeatedly held polygraph examinations are an appropriate condition of supervised release. *See, e.g.*, *United States v. Zinn*, 321 F.3d 1084, 1090 (11th Cir. 2003); *United States v. Singleton*, No. 23-11462, 2024 WL 1672324, at *2 (11th Cir. Apr. 18, 2024) ("[T]he district court did not err in considering the polygraph test results [in revoking the defendant's supervised release] . . . as the polygraph tests were authorized by his conditions of supervised release.").

Given the foregoing, Probation had reasonable suspicion to search Defendant's home. Consequently, Defendant's downstream challenge to the FBI's search warrant—that it was based on evidence obtained from Probation's

unlawful search—necessarily fails. So the Court denies Defendant's motion to suppress.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Suppress (Doc. 37) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on May 1, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record